```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
U.S. D.I.D. CORP.,                                                :
                                                                  :
                        Plaintiff,                                :
                                                                  :         12 Civ. 4023 (JMF)
           -v-                                                    :
                                                                  :         MEMORANDUM OPINION
                                                                  :              AND ORDER
WINDSTREAM COMMUNICATIONS, INC.,                                  :
                                                                  :
                        Defendant.                                :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/13/2012

JESSE M. FURMAN, District Judge:

On June 21, 2012, the Court dissolved a temporary restraining order ("TRO") that it had granted to Plaintiff U.S. D.I.D. Corp. ("U.S. D.I.D."), in this case, requiring Defendant Windstream Communications, Inc. ("Windstream") to continue providing telecommunications services to U.S. D.I.D. Although U.S. D.I.D. filed a notice of voluntary dismissal the following day, and the case is now closed, the parties have each claimed entitlement to some or all of the security that U.S. D.I.D. was required to post when the TRO was issued. For the reasons stated below, the Court concludes that Windstream is entitled to a portion of the security.

## BACKGROUND

On May 21, 2012, U.S. D.I.D., a reseller of interstate telecommunications services, filed this action against Windstream, a common and local exchange carrier, alleging breach of contract claims and violations of the Communications Act. (Compl. at 1). On the same date, U.S. D.I.D. moved for a TRO and an order to show cause why a preliminary injunction should not be granted to prevent Windstream from terminating its telecommunications services effective that night at 11:59 p.m. (Docket No. 21). Defendant threatened to terminate Plaintiff's services

1

on the ground that Plaintiff was reselling those services in violation of an express provision in the retail customer contract between the parties. Plaintiff contended that the prohibition on resale was and is unenforceable as a violation of the Communications Act or, in the alternative, on the grounds of estoppel or waiver.

That same evening, the Court issued a TRO requiring Defendant to continue providing Plaintiff with telecommunications services, and subsequently scheduled a preliminary injunction hearing for June 4, 2012. The Court also required Plaintiff to post security in the amount of $314,672.80, amounting to twice the charges on the most recent monthly invoice it had received from Defendant. On June 4, 2012, the Court began, but did not finish, the preliminary injunction hearing. At the end of the hearing, the Court orally modified the TRO to permit Defendant to charge Plaintiff at the standard rates for reseller, rather than retail, customers, effective June 1, 2012 (as Windstream had previously demanded if U.S. D.I.D. wanted to avoid termination), and scheduled the hearing to conclude on June 21, 2012.

At the conclusion of the hearing on June 21, 2012, the Court issued an oral ruling on the record denying U.S. D.I.D.'s motion for a preliminary injunction and vacating the TRO. The Court held, among other things, that Plaintiff had failed to demonstrate either a likelihood of success on the merits or the existence of sufficiently serious questions going to the merits to make them a fair ground for litigation. After giving its ruling, the Court asked defense counsel whether there would be any objection to return of the security posted by U.S. D.I.D. while the case continued. Counsel responded: "No objection, your Honor, considering you are dissolving the TRO." (Tr. at 17). Accordingly, the Court directed Plaintiff's counsel to file a proposed order for the return of the security. (*Id.*)

The next day, Plaintiff submitted a proposed order for the return of the posted security. In addition, Plaintiff filed a notice of voluntary dismissal. (Docket No. 34). Within an hour of Plaintiff's submission of the proposed order, however, Defendant objected, requesting that a portion of the security be applied to pay an invoice Windstream had issued to U.S. D.I.D. on June 21, 2012, covering the period from May 14, 2012, to June 14, 2012. Since then, Plaintiff and Defendant have each submitted letters addressing what the Court should do with the posted security. (Docket Nos. 35 and 36). In the meantime, the case remains closed due to Plaintiff's notice of voluntary dismissal.

## DISCUSSION

### A. Applicable Law

Rule 65(c) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order, but "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." As the Second Circuit has explained, this bond requirement

> serves a number of functions. It assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff. In addition, the bond provides the plaintiff with notice of the maximum extent of its potential liability.

*Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011) (internal citations omitted).

Given the language and purpose of Rule 65(c), a party wrongfully enjoined is "entitled to a presumption in favor of recovery" of "'provable' damages." *Id.* at 559 (quoting *Global NAPs, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 23 (1st Cir. 2007)). To be entitled to recover, the wrongfully enjoined party must both "properly substantiate the damages sought" and demonstrate that they "were proximately caused by the wrongful injunction." *Id.*; *see also, e.g.*,

3

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1056 (2d Cir. 1990) (holding that wrongfully enjoined parties "are entitled to damages as may be shown to have been proximately caused by the injunction, up to the amount of the bond") (citation omitted).  The proof of damages, however, "does not need to be to a mathematical certainty."  *Nokia*, 645 F.3d at 559 (quoting *Global NAPs*, 489 F.3d at 24) (brackets omitted).

If the party seeking recovery adequately establishes its damages, a court "must have a 'good reason' to deny recovery against the bond."  *Id.* (quoting *Global NAPs*, 489 F.3d at 23).  "Good reasons to deny recovery of all or a portion of the alleged damages would be that the damages sought were unreasonable in amount or that a party failed to mitigate them."  *Id.* (citing cases).  In light of the presumption in favor of recovery, "[t]he burden of demonstrating that recovery should be denied is on the party opposing recovery."  *Id.*

**B. Analysis**

Applying these principles here, the Court concludes that Windstream is entitled to recover a portion of the security posted by U.S. D.I.D.  Subject to the qualifications discussed below, Windstream has substantiated the damages sought by submitting an invoice showing the costs of services provided to U.S. D.I.D. during most of the period covered by the TRO.  *See Global NAPs*, 489 F.3d at 24-25 (finding charges for telecommunications services provided constituted the appropriate measure of "damages" for the purposes of recovery against an injunction bond and that no evidentiary hearing was thus necessary).  In addition, Defendant has demonstrated that these damages were a proximate cause of the wrongful TRO.  After all, absent the TRO, Windstream would not have provided telecommunications services to U.S. D.I.D. from May 22, 2012, through June 21, 2012.  Thus, it is U.S. D.I.D.'s burden to show "good reason" to overcome the presumption in favor of recovery and to deny Windstream any of the

security.  Plaintiff offers four reasons, but none qualifies as "good."

First, without citing any legal support for its position, Plaintiff argues that Defendant waived and is estopped from exercising its right to recover against the security because counsel stated at the close of the hearing that it had no objection to return of the security to U.S. D.I.D. (Pl.'s Letter Br. at 2).  The Court declines to find that Defendant is estopped, however, because, among other things, Plaintiff cannot establish detrimental reliance, which is "[a]n essential element" of an equitable estoppel claim.  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (internal quotation marks omitted).  Plaintiff asserts that it relied on counsel's representation "in making the decision to dismiss this action voluntarily."  (Pl.'s Letter Br. at 2). Even if true, however, the dismissal was without prejudice so Plaintiff is free to revive the case here or elsewhere, thereby remedying the alleged injury.  Although it certainly would have been preferable for counsel to make Windstream's claim to some of the security known in the first instance, as no harm arose from the brief period in which Windstream did not make a claim to the security, U.S. D.I.D.'s waiver and estoppel arguments fail.

Second, Plaintiff argues that ordering recovery against the security would amount to a decision on the merits, which the Court could not do without a noticed consolidation under Rule 65(a)(2) of the Federal Rules of Civil Procedure.  (*Id.* at 2).  In the same vein, Plaintiff argues that a decision on the merits requires preservation of its right to a jury trial.  (*Id.* at 4-6).  These arguments, however, confuse the issue of damages arising from the wrongful TRO and damages on the ultimate judgment on the merits.  The "issue in this case is not security for the payment of damages on an ultimate judgment on the merits."  *Global NAPs*, 489 F.3d at 21.  Instead, the Court is "concerned with security issued for interim harms suffered by [a party], when the [party] has been enjoined in order to preserve the status quo pending [further litigation]."  *Id.*  The fact

5

that U.S. D.I.D. voluntarily discontinued the case after the Court's dissolution of the TRO makes no difference to the analysis, as it does not change the fact that Windstream was harmed by the TRO.  Further, as noted above, U.S. D.I.D. is free to revive the underlying action and pursue its various claims for breach of contract and violation of the Communications Act.

Third, Plaintiff argues that issuance of the TRO was not "wrongful."  (Pl.'s Letter Br. at 3).  That argument, however, is easily rejected.  As the Second Circuit has held, a party has been "wrongfully enjoined" if a court finds that the enjoined party "had at all times the right to do the enjoined act."  *Blumenthal*, 910 F.2d at 1054; *accord Global NAPs*, 489 F.3d at 22.  As in *Global NAPs*, "[a]pplying that rule to this case is quite simple."  489 F.3d at 23.  The issue of whether Windstream was wrongfully enjoined was determined when the Court ruled that U.S. D.I.D. had failed to demonstrate either a likelihood of success on the merits or the existence of sufficiently serious questions going to the merits to make them a fair ground for litigation.  In light of that conclusion, Windstream should never have been enjoined.  *See id.*; *see also, e.g.*, *AFA Dispensing Group B.V. v. Anheuser–Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) (noting that the standard for a TRO and a preliminary injunction are the same).

Finally, Plaintiff contends that the Court should require compliance with the dispute procedures set forth in the parties' contract.  (Pl.'s Letter Br. at 6).  Windstream's entitlement to a portion of the security is not a creature of the contract on its own terms, however, but is instead meant to pay the "costs and damages" associated with the wrongful TRO.  Further, by seeking the TRO and preliminary injunction, Plaintiff agreed to liability up to the amount of the security "as the price for the [TRO]."  *Blumenthal*, 910 F.2d at 1054 (internal quotation mark omitted) (quoting *Commerce Tankers Corp. v. National Maritime Union,* 553 F.2d 793, 800 (2d Cir.1977)).  Thus, the security requirement embodied in Rule 65(c) supersedes the dispute

6

resolution procedures set forth in the contract.  *See* Fed. R. Civ. P. 65(c).[1]

For these reasons, the Court is prepared to award Defendant recovery against the posted security.  Nevertheless, Defendant is only entitled to those damages it suffered as a proximate result of the TRO.  The invoice that Defendant submitted to the Court includes charges for services provided from May 15, 2012, to June 14, 2012.  As the TRO was issued on the evening of May 21, 2012, to prevent a Defendant from terminating services at 11:59 that night, (Compl. ¶ 9), and the TRO was vacated on June 21, 2012, the invoice includes seven days of services that occurred prior to the issuance of the TRO, and does not include seven days of services provided pursuant to the TRO that will not be billed until the July 15, 2012 invoice.  (Reed Decl. II at 4). Furthermore, Defendant's request for recovery of $244,888.79 includes $57,336.40 in prior unpaid charges that are plainly not attributable to services provided as a result of the TRO.

Accordingly, on or before **July 23, 2012**, Defendant shall submit to the Court more accurate evidence of the "costs and damages" it sustained as a proximate result of being wrongfully enjoined.  Defendant's submission shall be limited to the costs of services from May 22, 2012 (the first day on which Defendant was required by the TRO to continue providing services to Plaintiff), through June 21, 2012 (the day on which the Court vacated the TRO), and shall not include any prior unpaid balances that are unrelated to the TRO.  By the same date, Defendant must submit to the Court, by e-mail to the Orders and Judgments Clerk in .pdf format and by e-mail to the Court in Microsoft Word format, a new proposed order consistent with this

---

[1] For similar reasons, there is no merit to Plaintiff's contention that Defendant should not recover all of its costs and damages because Defendant's increased rates and termination of services prior to June 3, 2012, would have constituted a breach of the contract. (Pl.'s Letter Br. at 4-5).  Absent the TRO, which the Court has since determined should not have been granted, Defendant would have terminated Plaintiff's services at 11:59 p.m. on May 21, 2012, so all of its "costs and damages" from May 22, 2012, forward were proximately caused by the TRO.

decision and the evidence of costs from May 22, 2012, to June 21, 2012.

    SO ORDERED.

Dated: July 13, 2012
       New York, New York

                                            JESSE M. FURMAN
                                     United States District Judge